IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LIVE FACE ON WEB, LLC,** | |
| **Plaintiff,** | Civil Action |
| vs. | No.: 1:17-cv-00538-ER |
| **CORONA CAPITAL, LLC,** | |
| **Defendant.** | |

**PLAINTIFF'S MOTION FOR ENTRY OF
FINAL DEFAULT JUDGEMENT
<u>AGAINST CORONA CAPITAL, LLC</u>**

Plaintiff Live Face on Web, LLC ("LFOW"), hereby requests the Court enter a final default judgement against defendant Corona Capital, LLC ("Defendant"), pursuant to Federal Rule of Civil Procedure 55(b), and in support thereof avers as follows:

**I.     THE LFOW SOFTWARE**

1.     LFOW is a developer and owner of "live person" software, which is an original work of authorship independently created by LFOW (the "LFOW Software"). (Amd. Compl. ¶8). LFOW owns the copyright to the LFOW Software, which has been asserted in this action. (Amd. Compl. ¶ 16).

2.     The LFOW Software allows a company to display a video of a "walking" and "talking" personal host who introduces a website to an online visitor. (Amd. Compl. ¶ 9). The personal host is, in effect, a web spokesperson for the specific company for whom the video has been created. (Amd. Compl. ¶ 9).

3.     Typically the web spokesperson explains a company's products and/or services and directs a visitor's attention to a particular product or aspect of the website. (Amd. Compl. ¶ 9). The LFOW Software is representative of LFOW's advertising idea; LFOW (and its customers)

1

advertise services and solicit business through the use of a website spokesperson, which is typically tailored to specific goods and services found on the associated website. (Amd. Compl. ¶ 9).

4. The LFOW Software enables a company to customize and dynamically modify settings and functionality of the web spokesperson. (Amd. Compl. ¶ 10). By way of example, a customer utilizing the LFOW Software can: (a) manipulate the positioning of the web spokesperson on its website and select between static, relative or dynamic positioning features; (b) adjust the delay between the time an online visitor enters the website and the start time of the web spokesperson's presentation; (c) select the number of times a video presentation plays for each particular visitor; and (d) select "click on me" functionality that directs a user to a predetermined page or section of the website which promotes goods or services and/or reinforces the image and brand of the customer. (Amd. Compl. ¶ 10).

5. The LFOW Software seeks to enhance a web site by using a real spokesperson to capture, hold and prolong the attention of the average online visitor, enhancing the ability of the website to advertise specific goods and services. (Amd. Compl. ¶ 11).

6. This technique has a direct positive impact on sales and/or the brand, public image and reputation of any company that has an online presence. (Amd. Compl. ¶ 11). Some customers of LFOW have enjoyed double-digit increases in web singups and sales as a result of the use of the LFOW Software, while others have reported increases of 24-60% in lead capture ratios (*See* **Exhibit A** hereto, Declaration of Eduard Shcherbakov ("Shcherbakov Decl."), at ¶ 3 and Ex. 1 pp. 35-36).

## II. THE DEFENDANT

7. On March 20, 2018, LFOW filed its Amended Complaint for copyright infringement. (D.I. 25).

8. On April 19, 2018, Defendant filed a motion to dismiss the Amended Complaint. (D.I. 31).

9. By order dated September 20, 2018, the Court denied the motion to dismiss the Amended Complaint, which required the parties to file a joint proposed scheduling order for the remainder of the case no later than October 10, 2018. (D.I. 40).

10. Defendant failed to file such joint proposed scheduling order before October 10, 2018, and instead, on October 11, 2018, counsel for Defendant, Jack B. Blumenfeld, Michael J. Flynn and the Law Firm of Morris, Nichols, Arsht & Tunnell LLP, filed a motion to withdraw as counsel for Defendant. (D.I. 44).

11. By order dated October 16, 2018, the Court granted defense counsel's motion to withdraw, and ordered the Defendant to secure substitute counsel and response to the Amended Complaint by December 15, 2018. (D.I. 45).

12. However, Defendant failed to answer or otherwise respond to the Amended Complaint, or have substitute defense counsel enter an appearance, by December 15, 2018 as required by the October 16, 2018 order.

13. On December 20, 2018, LFOW informed the Court of Defendant's lack of cooperation in the preparation of the status report, failure to answer and failure to secure substitute counsel of record as required by the October 16, 2018 order. (D.I. 45).

14. On December 20, 2018, LFOW also filed a Request for Clerk's Default. (D.I. 47).

15. On January 22, 2019, the Clerk entered a default against Defendant. (D.I. 48).

16. A default judgment has the effect of establishing as fact LFOW's well-pled allegations in the Amended Complaint and bars the Defendant from contesting those facts on appeal. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 Wright &

Miller, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)) (internal quotations omitted); *DirecTV v. DeCroce*, 332 F. Supp. 2d 715, 717 (D. N.J. 2004); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

17. A hearing is unnecessary to determine LFOW's damages since LFOW has submitted a detailed declaration in support of its Motion for Entry of Default Judgment (Exhibit A). *See* Fed. R. Civ. P. 55(b)(1); *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly"); *GE Healthcare Fin. Svcs. v. New Brunswick X-Ray Group*, No. 05 Civ. 833, *8 (D. N.J. January 3, 2007) ("When damages are for a sum certain or a sum calculable, a district court may enter final judgment without further evidentiary hearing."); *Thompsons Film, LLC v. Velez*, 2014 U.S. Dist. LEXIS 102590, *10 (M.D. Fla. June 5, 2014)("A hearing is not necessary if a party submits sufficient evidence to support the request for damages").

### III. LIABILITY IS ADMITTED

18. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Carlin v. Bezos*, No. 15 Civ. 2774 (3d Cir. filed May 23, 2016); *Brownstein v. Lindsay*, 742 F.3d 55, 77 n.16 (3d Cir. 2014); *Vision Films, Inc. v. John Does 1-24*, No. 12 Civ. 1746, n. 6 (D. Del. March 20, 2013); *Live Face on Web, LLC v. Hippocratic Solutions, LLC*, No. 15 Civ. 6874 (D. N.J. March 21, 2017); *Live Face on Web, LLC v. Mark Guerra*, No. 15 Civ. 7143 (D. N.J. March 21, 2017).

19.     "Copying is a shorthand reference to the act of infringing any of the copyright owner's . . . exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (internal citation and quotation omitted).

20.     The exclusive rights in 17 U.S.C. § 106 include: the right "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."

21.     Direct copyright infringement is a <u>strict liability offense</u>. "Personal participation in the infringing activity will result in direct liability." *Little Mole Music v. Spike Inv., Inc.*, 720 F. Supp. 751, 755 (W.D. Mo. 1989).

22.     "<u>Anyone</u> who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. 501(a) (emphasis added). In fact, "motive or intent is irrelevant to establishing liability, for 'even an innocent infringer is liable for infringement . . . intent or knowledge is not an element of infringement.'" *Little Mole Music*, 720 F. Supp. at 754-55 (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1113 (2d Cir.1986)) (alteration in original); *see also Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 637 (8th Cir. 1996) ("'The state of mind of the infringer is relevant, if at all, only to the award of damages.'").

23.     As set forth in the Amended Complaint, LFOW owns the valid copyright registration TXu001610441. (Amd. Compl. ¶ 16).

24.     The Defendant own, operate and/or control the website coronacapitalgroup.com ("Defendant's Website"), that advertise and promote the products and/or services of Defendant. (Amd. Compl. ¶ 17, 58).

25. The Defendant copied and stored an infringing version of the LFOW Software on the webserver(s) for Defendant's Website. (Amd. Compl. ¶ 22).

26. When a web browser retrieves a page from the Defendant's Website, a copy of the infringing version of the LFOW Software is distributed by Defendant to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. (Amd. Compl. ¶ 25).

27. Accordingly, each visit to the Defendant's Website is a new act of copyright infringement. (Amd. Compl. ¶ 25).

28. As established by the admitted allegations in the Amended Complaint (Amd. Compl. ¶¶ 26, 52). and confirmed by the attached exhibits, the similarity between the LFOW Version 7.0.0 (Compl., Ex. A-2) and the "lindsey_corona_client.js" file (Compl., Ex. C) distributed by the Defendant confirms infringement. The infringing "lindsey_corona_client.js" file includes direct references to "LFOW" and uses language with "lf_" prefixes that establish infringement. (Amd. Compl. ¶ 24; *see, e.g.*, Amd. Compl., Ex. C at pp. 2, 5, 6, 7, 8).

## IV. CALCULATION OF DAMAGES

29. Pursuant to the relevant portion of 17 U.S.C. §504(a), an infringer of a copyright is liable for "the copyright owner's actual damages and any additional profits of the infringer." In determining damages under §504(a)(1), the copyright owner is entitled to both actual damages and the infringer's profits, to the extent profits are not duplicative of actual damages. *See* 17 U.S.C. §504(b).

30. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id*.

31. As set forth above, the LFOW Software has a proven track record of increasing revenue for licensees, and certainly the Defendant also enjoyed increased profits directly attributable to its infringement. (Amd. Compl. ¶ 30).

32. However, without the benefit of discovery, LFOW cannot reasonably calculate the profits of the Defendant. Accordingly, LFOW only seeks its actual damages, as calculated by the standard license fees charged by LFOW as alleged in the Amended Complaint[1]. (Amd. Compl. ¶ 31).

33. Even when entering default judgment on claims with uncertain damages, courts are afforded the discretion to "decline to hold a Rule 55(b)(*2) hearing, particularly where the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *GE Healthcare*, No. 05 Civ. 833 at *8–9.

34. "The Court has wide discretion in assessing these damages, which may be awarded even when they are not susceptible to precise calculations." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315 (S.D. Fla. 1998) (citing *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564-65 (11th Cir. 1986)); *Axiom Worldwide, Inc. v. HTRD Group H.K. Ltd.*, 2013 U.S. Dist. LEXIS 77650 (M.D. Fla. June 1, 2013).

35. One element of a plaintiff's copyright damages is the profits the plaintiff would have earned from third parties, were it not for the infringement. *See Grant Heilman Photography v. McGraw-Hill Companies*, 115 F. Supp. 3d 518, 524 (E.D. P.A. 2015); *Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. N.Y. 2001), citing 4 Nimmer § 14. 02 A, at 14-9 to 10.

---

[1] Pursuant to 17 U.S.C. §505, the Court "may also award a reasonable attorney's fee to the prevailing party as part of costs." However, to simplify the issues presented herein, LFOW has not requested its fees and costs, though it pled a demand for both. (Amd. Compl. ¶ 64).

36. "[A] copyright owner is permitted to recover his own 'actual damages,' including lost profits and 'reasonable royalty rates.'" *MGE UPS Sys. v. GE Consumer & Indus. Inc*., 622 F.3d 361, 366 (5th Cir. 2010), quoting *On Davis*, 246 F.3d at 167.

37. The Federal Circuit, in *Gaylord v. United States*, noted that "many circuits award actual damages based on 'the fair market value of a license covering the defendant's use.'" 678 F.3d 1339, 1343 (Fed. Cir. 2012) (citing *On Davis*, 246 F.3d at 172); *Thoroughbred Software Int'l, Inc. v. Dice Corp*., 488 F.3d 352, 353, 359-60 (6th Cir. 2007) (finding that a license fee was the proper measure of damages for every infringing copy of software, even those copies that were unused); *Jarvis v. K2 Inc*., 486 F.3d 526, 533-34 (9th Cir. 2007) ("in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work."); *McRoberts Software, Inc. v. Media 100, Inc*., 329 F.3d 557, 566 (7th Cir. 2003) (affirming award of $1.2M for software development and license fees and another $900,000 in lost profits).

38. The LFOW Software is licensed to customers for a license fee by LFOW, which also receives fees for other services. (Amd. Compl. ¶ 14).

39. The majority of revenue received by LFOW for licensing Version 7.0.0 is the result of monthly license fees received by LFOW pursuant to license agreements. (Shcherbakov Decl. ¶ 5.)

40. LFOW has submitted a LFOW Software License and Services Agreement (the "LFOW Agreement") adopted in 2010[2] for its monthly licensing program. *See* Scherbakov Decl., Ex. 2 for a true and correct copy of the LFOW Agreement.

---

[2] As set forth below, infringement in this case began in 2011 in this case.

8

41. As shown in Section 4 of the form LFOW Agreement, the license term is one year with automatic renewals. (Shcherbakov Decl. ¶ 5, Ex. 2).

42. The recurring fees if customers properly license the LFOW Software under the LFOW Agreement begin at $6,900/mo. This $6,900 monthly fee includes a streaming fee that starts at a minimum of $3,700/mo. and increases to higher tiers with higher streaming volume. (Shcherbakov Decl. ¶6.) The $6,900 monthly fee also includes $3,200/mo. for the licensed materials or "virtual greeter" fee for the display of the spokesperson video. (*Id.*)

43. The lowest annual recurring fee for a properly-licensed version of LFOW 7.0.0 under the LFOW Agreement is $82,800 annually. (*Id.*)

44. LFOW also charges additional recurring fees, such as "click-on-me functionality," that is often purchased by LFOW customers. (*Id.*)

45. Moreover, LFOW also receives non-recurring fees associated with creating the web spokesperson videos themselves for new LFOW customers or for customers who desire additional web spokesperson videos. (*Id.*)

46. Thus, LFOW seeks an award of $6,900 per month of infringement, plus the non-recurring video production fee that would have typically been charged for Defendant's Website.

47. The license fees requested are not speculative or inflated. These fees represent the fair market value for use of the LFOW Software, as evidenced by the acceptance of licenses by LFOW customers and the continuous licensing of Version 7.0.0 since 2008. Version 7.0.0 has <u>only</u> been licensed on an annual basis with monthly license fees. (Shcherbakov Decl. ¶5).

48. LFOW has provided not only its form license (Shcherbakov Decl., Ex. 2), but also three executed licenses (with client information redacted).[3] (Shcherbakov Decl., Exs. 3–5) These executed licenses were entered prior to the form license but feature terms similar to those in the current LFOW Agreement. (Shcherbakov Decl. ¶ 7).

49. In the executed licenses the streaming and materials fees could be bundled as one or priced separately, but in either circumstance were priced via tiers and always included as a single license fee charged by LFOW for Version 7.0.0. (*Id.*).

50. While the minimum in the LFOW Agreement adopted in 2010 is $6,900, *every* LFOW license for Version 7.0.0 has generated far more than the $6,900/mo. license fee sought in this case. (*Id.*) In fact, no licensee of the LFOW Software has <u>ever</u> averaged below $10,000/mo. in eight years of licensing history. (*Id.*).

51. Because every LFOW licensee for Version 7.0.0 has averaged $10,000/mo. (Shcherbakov Decl. ¶ 7), the standard form fee of $6,900/mo. is a conservative and fair calculation of damages in this action.

52. In a similar action involving Version 7.0.0, the Chief Judge for the Middle District of Florida awarded LFOW $6,900/mo. as the proper measure of damages for a default judgment awarded to LFOW. *Live Face on Web, LLC v. Tweople, Inc. et al.*, Case No. 6:14-cv-00044-ACC-TBS, Docket Entry # 307 (attached hereto as **Exhibit B**).

53. If the Defendant had properly paid LFOW for its software, it would have incurred a video production fee for its website and the corresponding monthly license fee. (Shcherbakov Decl. ¶ 8).

---

[3] If the Court would like to receive further evidence of the fees routinely paid by LFOW's customers, LFOW can provide unredacted copies of these licenses for *in camera* review along with additional customer agreements evidencing the fees paid to LFOW.

54. The standard fee of $467.95 per website would have been paid by the Defendant, as it used a 30 second video. (Shcherbakov Decl. ¶ 8).

55. Additionally, the monthly license fee for the package selected by the Defendant would have included the video streaming plan and the virtual greeter fee. (Shcherbakov Decl. ¶ 6).

56. In its normal course of business, LFOW would have demanded payment for full twelve-month licenses, which renew automatically until termination. (Shcherbakov Decl. ¶¶ 5, 8). However, for the purposes of this Motion, LFOW has calculated the monthly total for the Defendant to be conservative on its request for damages.

57. Without the benefit of discovery from the Defendant, LFOW reviewed the web archive records to confirm dates when the software was being distributed by the Defendant.

58. The earliest available archive that shows the distribution of LFOW's Software is from February 2011 (Shcherbakov Decl., ¶ 10).

59. LFOW confirmed the link to the infringing version of the LFOW Software remained available on coronacapitalgroup.com until December 2013 (Shcherbakov Decl. ¶ 11).

60. Accordingly, Defendant used the infringing version of the LFOW Software for at least 35 months on coronacapitalgroup.com (Shcherbakov Decl. ¶ 11).

V. **PRE-JUDGMENT INTEREST**

61. "Pre-judgment interest is available in copyright cases at the District Court's discretion." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 145 (3d. Cir. 2011).

62. Pre-judgment interest may be awarded from the date of first infringement, regardless of when the copyright holder learned of the infringement. *Id.* at 150–51.

63. "District courts have discretion in determining the applicable interest rate for an award of pre-judgment interest." *EMC Corp. v. Zerto, Inc.*, No. 12 Civ. 956 at *28 (D. Del. March

31, 2016) (citing *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988)).

64. Courts have recognized that using the prime rate, compounded quarterly, best compensates intellectual property right holders "for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is `a better measure of the harm suffered as a result of the loss of the use of money over time.'" *EMC Corp. v. Zerto, Inc.*, No. 12 Civ, 956 at *28 (quoting *IMX, Inc. v. LendingTree, LLC,* 469 F. Supp. 2d 203, 227–228 (D. Del. 2007) (citing *Mars, Inc. v. Conlux USA Corp.,* 818 F. Supp. 707, 720-21 (D. Del. 1993), *aff'd,* 16 F.3d 421 (Fed. Cir. 1993)).

65. An unpaid royalty of $6,900.00 was due in full at the beginning of each month of the infringement period.

66. A $467.95 video production fee would also have been due at the beginning of the infringement period.

67. The pre-judgment period, or period of accrued interest, was calculated from the beginning of the month in which such royalty and video fee were not paid through April 1, 2020.

68. A chart showing the calculations for pre-judgment interest totaling $85,037.20 on unpaid royalties (i.e. license fees) through April 1, 2020 is attached hereto as **Exhibit C**. Using the same methodology, pre-judgement interest totaling $661.94 would be due on the unpaid video fee through April 1, 2020.

69. This interest was determined by calculating the weighted average of the Federal Reserve Prime Rate over the period of time from which the royalty was unpaid until April 1, 2020, taking into account all changes in such rate during the applicable period. *See* **Exhibit D**. Updated rates were applied starting in the month in which each change in the Prime Rate occurred.

70. The interest owed on each unpaid royalty was calculated using the principal unpaid royalty of $6,900.00, a growth period starting at the month of the missed payment through April 1, 2020, and the average weighted Prime Rate compounded quarterly.

71. The table below calculates the damages attributable to the admitted infringement of Defendant (Shcherbakov Decl. ¶ 12), including the applicable pre-judgment interest:

| Website | Video Production Fee | License Fee (per month based on the fee for streaming and virtual greeter) | Total License Fee for Infringement (monthly fee x months usage between February 2011 and December 2013) | Subtotal of Line Items |
|---|---|---|---|---|
| coronacapitalgroup.com | $467.95 | $6,900 | $241,500 | $241,967.95 |
| | | | Pre-Judgment Interest | $85,607.10 |
| | | | **TOTAL ROYALTIES PLUS INTEREST DUE:** | $327,575.05 |

72. Based on the admitted allegations of the Amended Complaint, the standard video costs and license fees charged by LFOW during the time period of infringement plus applicable pre-judgment interest, LFOW requests the Court award default judgment and award damages in the amount of $327,575.05, as set forth above.

Dated: April 9, 2020                    Respectfully Submitted,

*Of Counsel:*                           */s/ George Pazuniak*
                                        George Pazuniak, Esq. (DE Bar #478)
Vladislav Tinovsky, Esq.                O'KELLY & ERNST, LLC
(Admitted *Pro Hac Vice*)               824 N. Market Street
TINOVSKY LAW FIRM                       Suite 1001A
5 Neshaminy Interplex                   Wilmington, DE 19801
Suite 205                               302-478-4230
Trevose, PA 19053                       gp@del-iplaw.com
215-568-6862

13

vtinovsky@tinovskylaw.com *Counsel for Plaintiff Live Face on Web, LLC*

## CERTIFICATE OF SERVICE

I, George Pazuniak, Esquire hereby certify that I caused a true and correct copy of the foregoing Motion for Entry of Final Default Judgment to be served via first class mail and certified mail (return receipt requested) on the following:

Corona Capital, LLC
16192 Coastal Highway
Lewes, DE 19958

Dated: April 8, 2020             /s/ George Pazuniak
                                 George Pazuniak, Esquire